Phyllis M. STRICKLAND, Plaintiff,

v.

SEARS, ROEBUCK AND CO., Defendant.

Civ. A. No. 86–702–N.

United States District Court, E.D. Virginia, Norfolk Division.

May 22, 1988.

Phyllis M. Strickland, pro se.

Gregory N. Stillman, Kelly O. Stokes, Hunton & Williams, Norfolk, Va., for defendant.

## OPINION AND ORDER

KELLMAN, District Judge.

Plaintiff, a former employee of defendant Sears, Roebuck & Co., brought this action, alleging sexual harassment and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e–2(a) and § 2000e–3(a). The complaint filed herein contends that during her employment with Sears, plaintiff was subjected to sexual harassment by her supervisor Chris Mitchell; that because of a sexual harassment complaint she filed with the EEOC, she suffered from retaliation by Sears; and that the harassment and retaliation created such a hostile working environment that she was forced to resign. Plaintiff seeks injunctive relief, full back pay, reinstatement, reasonable attorney's fees and costs.

The record shows plaintiff filed a sexual harassment charge and a retaliation charge with the EEOC. The EEOC dismissed each claim and issued right to sue letters on each. Accordingly, plaintiff exhausted her administrative remedies pursuant to 42 U.S.C. § 2000e–5. Thereafter, she filed this action which came on for trial on April 15, 1987. At the end of plaintiff's case in chief, defendant moved for dismissal, pursuant to Rule 41(b) of the Federal Rules of Civil Procedure, on the ground that upon the facts and the law, plaintiff had shown no right to relief. That motion was renewed at the end of trial. The court withheld rulings on each motion.

### I.

In the complaint, plaintiff asserts that on April 10, 1985, while employed as a telephone sales representative with Sears, her supervisor, Chris Mitchell, approached her as she sat at her desk, and rubbed his hands all over her shoulders and neck, ran his fingers through her hair, and made other unwelcome sexual advances towards her. She further contends that around 15 minutes later, Mitchell, in front of plaintiff's co-workers, made a false statement concerning the two of them going out and having a good time together. Plaintiff asserts that she has developed health problems due to the extreme embarrassment and anxiety she suffered from being subjected to Mitchell's advances and staring.

The evidence fails to establish Mrs. Strickland's basic allegations that Mitchell put his hands all over her shoulders and ran his hands through her hair, or made other sexual advances towards her. However, the evidence does show that he touched her with a "lead card." Mitchell first denied touching plaintiff at all, then he said he may have touched plaintiff with a "lead card," used to cheer on employees and to promote sales. Mitchell admitted he made the statement he and Phyllis (Mrs. Strickland) had been out dancing, but said he did it as a joke and that he apologized to her for it.

On April 17, 1987, plaintiff and Donna Doyle met with the manager of the Sears facility, Nicholas Barba, to report Mitchell's conduct. Barba called his assistant, Melva Perrot, and Mitchell in to the meeting for a confrontation. Mitchell denied any touching except possibly that done with a "lead card." Jackie Daye, another co-worker of plaintiff, was called in as a witness but stated that although she saw

Mitchell touch other employees with lead cards, she did not see him touch Strickland or Doyle.

Nevertheless, manager Barba immediately admonished Mitchell that there was to be no touching of employees in any manner or form. He also informed Strickland and Doyle that Mitchell would remain their supervisor but reassured them there would be absolutely no more touching. The evidence shows a later meeting between Barba and Mitchell where Barba again explained the seriousness of plaintiff's accusations and again admonished there would be no touching. All parties agree that no touching incident took place again.

On May 3, 1985, Strickland filed with the EEOC a discrimination charge against Sears alleging sexual harassment and citing the touching incident referred to above. It is not clear what investigative steps were taken by the EEOC. However, on June 30, 1986, the Commission dismissed the complaint and issued a right to sue letter, finding no reasonable cause to believe plaintiff had been sexually harassed.

Title VII of the Civil Rights Act of 1964 makes it "an unlawful employment practice for an employer ... to discriminate against any individual with respect to her compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin." 42 U.S.C. § 2000e–2(a)(1). Guidelines issued by the EEOC in 1980 specify that sexual harassment, whether "unwelcome sexual advances, requests for sexual favors, [or] other verbal or physical conduct of a sexual nature," is a form of sex discrimination actionable under Title VII. *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 106 S.Ct. 2399, 2405, 91 L.Ed. 2d 49 (1986); 29 CFR § 1604.11(a)(1985). Thus, "without question, when a supervisor sexually harasses a subordinate because of the subordinate's sex, that supervisor 'discriminate[s]' on the basis of sex." *Meritor Savings Bank*, 106 S.Ct. at 2409.

This circuit has, heretofore, followed other courts' decisions, and the Supreme Court has recently agreed in *Meritor* that there are two varieties of sexual harassment.

These include "harassment that creates an offensive environment ('condition of work') and harassment in which a supervisor demands sexual consideration in exchange for job benefits ('quid pro quo')." *Katz v. Dole*, 709 F.2d 251, 254 (4th Cir.1983); *Henson v. Dundee*, 682 F.2d 897, 908 (11th Cir.1982). Strickland's claim falls under the "condition of work" category, the complaint indicating that the harassment affected the terms, conditions and privileges of plaintiff's employment with defendant by creating an "intimidating, hostile, and offensive work environment." 29 CFR § 1604.11(a)(3).

The Fourth Circuit in *Katz* posited a two step analysis in evaluating "condition of work" sexual harassment claims. "First, the plaintiff must make a prima facie showing that sexually harassing actions took place, and if this is done, the employer may rebut by showing either directly by proving that the events did not take place, or indirectly, by showing that they were isolated or genuinely trivial." *Katz*, 709 F.2d at 256. Second, the plaintiff must establish the liability of the employer. *Id.* The most difficult legal question typically will concern the responsibility of the employer for that harassment. *Id.* at 255. However, "For sexual harassment to be actionable, it must be sufficiently severe or pervasive 'to alter the conditions of [the victim's] employment and create an abusive working environment.'" *Meritor Savings Bank, supra*, 106 S.Ct. at 2406, quoting, *Henson v. Dundee, supra*, 682 F.2d at 904.

■ Plaintiff's allegations in this case do not sufficiently state a claim for "condition of work" sexual harassment. The evidence showed that plaintiff was touched by Mitchell only once. Mitchell's comment about he and Strickland going out occurred only 15 minutes after the alleged touching and, again, it is uncontested that this was the only such incident. Manager Barba took prompt remedial action to insure such events would not happen again. Such isolated actions cannot be sufficient to create a hostile working environment and thus, sustain a cause of action for sexual harass-

ment under Title VII, *Katz, supra,* 709 F.2d at 256.

In *Meritor,* the Supreme Court held that employers are not automatically liable for sexual harassment by their supervisors. Although the court did not issue "a definitive rule on employer liability," it indicated that agency principles were to be used to place limits on the acts of employees for which employers can be held responsible under Title VII. *Meritor,* 106 S.Ct. at 2408. Plaintiff had access to and utilized the procedure Sears provided in order to lodge her complaint against Mitchell. Sears has a written policy against discrimination, as well as a policy which specifically addresses sexual harassment and alerts employees to their interest in preventing that form of discrimination. *See Meritor* at 2408–9. Moreover, Sears reacted with immediate and appropriate corrective action.

Accordingly, since defendant has shown that the disturbing actions were isolated and remedial steps were taken immediately, plaintiff has not satisfied the requirements for proving a sexual harassment claim under Title VII.

## II.

Strickland further asserts in her complaint that Sears retaliated against her for filing the sexual harassment charge with the EEOC. Plaintiff filed a retaliation charge on June 24, 1985, which the EEOC dismissed, and issued a right to sue letter on July 25, 1985. In support of her retaliation charge plaintiff alleges that Mrs. McKeel, Mitchell's immediate supervisor, responsible for sales personnel, singled her out for poor work performance and told her that her job was in jeopardy if her sales did not improve. (Barba concurred in this). Plaintiff also complains that Barba held back a raise she was due to receive the end of May; that Barba questioned her concerning any further events with Mitchell, and that these circumstances coupled with Mitchell's actions created such an intolerable working environment that she was forced to resign.

42 U.S.C. § 2000e–3(a) makes it "an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, . . . because he has opposed any practice by this Title [42 U.S.C.S. § 2000e–2000e–17], or because he has made a *charge,* testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this title." (emphasis added). The sequence of proof and burdens prescribed by *McDonnell–Douglas Corp. v. Green,* 411 U.S. 792, 802–5, 93 S.Ct. 1817, 1824–5, 36 L.Ed.2d 668 (1973), and *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 252–6, 101 S.Ct. 1089, 1093–5, 67 L.Ed. 2d 207 (1981) apply to retaliation cases under § 2000e–3, as well as to discriminatory treatment claims. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir.1985).

First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the the [employment decision.]" Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pre-text for discrimination. *Burdine,* 450 U.S. at 252–53, 101 S.Ct. at 1093.

Plaintiff must prove her prima facie case of retaliation by showing: 1) she engaged in protected activity; 2) Sears took adverse action against her; and 3) a causal connection existed between the protected activity and the adverse action. *Ross,* 759 F.2d at 365. To rebut the prima facie case of retaliation, the employer need not show absence of retaliatory motive, but only produce a legitimate non-discriminatory reason for the adverse action, raising a "genuine issue of fact" as to whether retaliation occurred. *Id., Burdine, supra,* 450 U.S. at 254, 101 S.Ct. at 1094. For plaintiff to disprove the employer's legitimate explanation, she must show that the adverse

action would not have occurred "but for" the protected conduct. *Ross*, 759 F.2d at 366; *EEOC v. Federal Reserve Bank of Richmond*, 698 F.2d 633, 669 (4th Cir. 1983), rev'd on other grounds, 467 U.S. 867, 104 S.Ct. 2794, 81 L.Ed.2d 718 (1984).

Mrs. Strickland did show that she received several merit certificates for sales performance while she was at Sears. The evidence also shows that Mrs. McKeel and Mr. Barba took the actions Strickland complains of. However, the evidence further shows that although Strickland received a certificate for her March sales, her April sales were way down, as were her May sales. In March, she achieved 94.6% of her goal and ranked Number 11 out of 27 telephone sales representatives. In April, plaintiff achieved only 33.1% of her goal, dropping her rank to 22 of 22; and in May, 1985 she achieved 25.6% of her goal, ranking 20 of 20. (Def. Exhibit 8).

Mrs. McKeel testified that it was her responsibility to evaluate the performance of the telephone sales representatives. She stated that she kept all new telephone sales representatives under particular scrutiny, so as to monitor their progress and to catch any problems at an early stage. McKeel stated she would determine performance by figuring for each sales representative what percentage of the sales goal assigned to that sales person was reached for each month and then rank them accordingly. McKeel also said that if an employee, particularly a new employee, was having sales trouble, she would counsel that person about what was expected of her. McKeel had so counseled Sharon Stutsman, a telephone sales representative, on February 13, 1987. (Def. Exhibit 11).

On May 24, 1985, Mrs. McKeel called Strickland into her office to discuss her sales for April and May. (Def. Exhibit 1, p. 37). She explained to plaintiff that certain unit standards in sales must be met, that it was vital that her sales performance be consistent, and that failure to improve her sales could result in the termination of her job. Strickland's June sales percentage improved dramatically, plaintiff achieving 102.1% of her goal. Barba, in a letter dated July 11, 1985, congratulated plaintiff on her June sales performance but emphasized that her performance must remain consistent in order to keep her job. (Def. Exhibit 1, p. 42). Barba admitted holding up plaintiff's raise because of her poor sales performance. However, plaintiff did receive the raise as soon as her sales improved. Barba also admits asking Strickland "how things were going," but only to indicate his concern and to follow up on Strickland's working situation.

Plaintiff failed to show the third element of her prima facie case of retaliation, that there was a causal connection between Sears' management actions and the filing of her sexual harassment complaint with the EEOC. Moreover, Sears successfully articulated a legitimate nondiscriminatory reason for their actions; namely, plaintiff's poor sales performance in April and May. Sears' denial of any discriminatory intent, together with the testimony that other employees were similarly reprimanded for poor sales and the file memos detailing plaintiff's sales, and other meetings with her, show legitimate business management practices, rather than discriminatory intent.

### III.

The court finds that plaintiff failed to satisfy the requirements necessary to make out her causes of action. Plaintiff's claims for sexual harassment and retaliation are, therefore, DISMISSED.