**Camelle TATUM, Plaintiff,**

v.

**HYATT CORPORATION,
et al., Defendants.**

**Civil Action No. 93–0119 (HHG).**

United States District Court,
District of Columbia.

Nov. 16, 1994.

Victor Earl Long, Koonz, McKenney, Johnson & Regan, P.C., Washington, DC, for plaintiff.

Brian Stuart Harvey, Baker & Hostetler, Washington, DC, for defendants.

## OPINION

HAROLD H. GREENE, District Judge.

This is an action under Title VII of the Civil Rights Act of 1964, as amended, alleging sexual harassment and also raising a number of common law claims. The matter is here on defendants' motion for summary judgment.

## I

On January 29, 1992, plaintiff was employed as a deli attendant at Zephyr's Deli in the Grand Hyatt Washington Hotel. According to the complaint, Michael Moussara, who held the position of Executive Steward at the Hotel, unexpectedly wrapped his arms around her neck and body, rubbing against her as if to stimulate a sex act, made comments about her physical attractiveness, and otherwise harassed her sexually. Plaintiff cried out to a co-worker for help, but Moussara merely laughed. Eventually, plaintiff got away, but not before Moussara was able to place a piece of ice in plaintiff's front skirt pocket. Plaintiff reported the episode to a supervisor, the employment manager of Hyatt, and others shortly after the incident. According to the complaint, plaintiff continues to suffer significant physical and mental injuries.

Plaintiff filed a complaint of discrimination with the Equal Employment Opportunity Commission, and that agency granted her the right to sue. Thereafter, she filed this action, and eventually defendants moved for summary judgment. It is that motion, and various oppositions and other papers filed by the parties, that are now before the Court.

## II

Plaintiff's essential theories of the case against Hyatt are (1) that the hotel corporation was responsible for a hostile environment of sexual harassment, (2) that the corporation should have but did not take action, and (3) that because Moussara was plaintiff's supervisor, the corporation is responsible for his improper activities.

Hyatt's affidavits, which are essentially uncontradicted, demonstrate the corporation's high degree of awareness of the dangers of sexual harassment and its action in taking prompt and reasonable steps as it was made aware of plaintiff's experience on January 29, 1992.

Hyatt's "Corporate Ethics Statement" contains explicit prohibitions of sexual harassment, including explanations that such conduct includes unwelcome sexual advances and physical contact; requests for sexual favors;

sexually-oriented verbal abuse; tasteless sexually-oriented comments and jokes; extension of unwanted sexual attention; and a work environment that is intimidating or offensive because of sexually-oriented conversations, demands, or physical contacts. Each manager must sign this policy statement once a year.

■ Hyatt's activities following the report regarding the harassment of plaintiff may be summarized as follows. An internal investigation was conducted under the direction of the Hotel's Director of Human Resources. That investigation included the securing of statements on the day of the incident from Moussara and several witnesses, and the securing of an additional statement from another employee the following day. Moussara's statement averred that he did no more than to place his hands on plaintiff's shoulders, asking her how she was doing. This version was supported by two of the eye-witnesses to the event, while plaintiff's version was supported by the third witness.

Plaintiff herself did not return to work after January 29, 1992, and it therefore became impossible to secure further details from her; Moussara, by contrast, cooperated fully with the investigation. Hyatt also considered that the incident had occurred in an area that is in plain view of the public, and that Moussara had never previously been charged with any kind of sexual harassment. Plaintiff, on the other hand, had been previously involved in issues with the Human Resources Department which personnel of that department raised questions concerning her reliability.

Nevertheless, the Director of that department conducted a meeting concerning the matter. Several efforts to have plaintiff come in to the Hotel either to work or to discuss the incident and her status were entirely unsuccessful, and on March 13, 1992, plaintiff was terminated. In August of that year plaintiff made a claim for Workers' Compensation benefits that relied on an asserted disability arising out of the January 29 incident.

■ It is of course well settled that it is an essential element of a sexual harassment claim, *inter alia*, that the employer failed to take appropriate action in response to a report of such activity. *See, e.g.*, 29 C.F.R. § 1604.11(d); *Robinson v. Thornburgh*, 54 Fair Empl.Prac.Cas. (BNA) 324, 326, 1990 WL 174918 (D.D.C.1990). Here, the Hotel took prompt action to investigate, and remedy if necessary, plaintiff's claim. Thus plaintiff's cause of action must largely fail for this reason alone.

### III

■ The sexual harassment action against Hyatt also fails on a broader basis. Title VII renders actionable the maintenance by an employer of an abusive or hostile working environment for women or a woman. *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). On this issue, plaintiff argues that in cases such as this one, where the discriminatory behavior is very "severe," a single unwelcome physical advance or touching can seriously poison the victim's working environment. The law does not support that conclusion in this case.

To be sure, in *Harris v. Forklift Systems*, 510 U.S. 17, ——, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993), the Supreme Court affirmed the rule that a hostile work environment exists where the employer's conduct is "sufficiently *severe* to alter the conditions of the victim's employment and create an abusive work environment." *Id.*, at ——, 114 S.Ct. at 370, quoting *Meritor*, 477 U.S. at 65, 106 S.Ct. at 2404 (emphasis added). For the most part, however, absent the most stringent circumstances, courts have refused to hold that one incident in itself was so severe as to create a hostile work environment. *See, e.g., King v. Hillen*, 21 F.3d 1572, 1581 (Fed.Cir.1994) ("[I]n the usual case an isolated offensive incident does not create an abusive or intimidating environment."); *Strickland v. Sears, Roebuck & Co.*, 693 F.Supp. 403, 405 (E.D.Va.1988). In the instant case, where only a single isolated incident occurred, and the employer took the reasonable prophylactic steps to prevent a recurrence, the Court finds that the Moussara incident did not alter plaintiff's employment conditions under the current legal standards.

## IV

Insofar as Hyatt is concerned, that leaves the issue whether the corporation should be held liable directly for the Moussara incident (assuming that it occurred as described by plaintiff).

Plaintiff argues that Moussara served in a supervisory or decision-making capacity for Hyatt, and that on this basis the corporation should be held liable. While it is true that Moussara was a supervisor in the Hyatt organization, the record is clear that he never was this plaintiff's supervisor. As defendant correctly points out, plaintiff "has presented no evidence that Moussara ever supervised her work in any respect ... [or that] he had 'control over [plaintiff's] terms and conditions of employment.'" Joint Reply at 16 n. 7.

Likewise, plaintiff cannot recover from Moussara himself, for under the statutory language and its legislative history, Title VII does not permit recovery from someone who is not an employer but merely a co-employee, even if he is a supervisor. *Miller v. Maxwell's Intl. Inc.,* 991 F.2d 583 (9th Cir.1993).

For these reasons, defendants are entitled to summary judgment against plaintiff on all of plaintiff's Title VII claim.

## V

That leaves plaintiff's various common law claims.[1] But here again plaintiff cannot prevail, for the District of Columbia Worker's Compensation Act, D.C.Code §§ 36–301 *et seq.* provides the exclusive remedy for plaintiff's workplace injury. *See* D.C.Code § 36–304(a) (liability under the Act "shall be exclusive and in place of all liability of such employer to the employee)." *See also, District of Columbia v. Thompson,* 570 A.2d 277, 285–87 (D.C.1990); *Grillo v. National Bank of Washington,* 540 A.2d 743 (D.C.1988); *Parodi v. District of Columbia Department of Employment Services,* 560 A.2d 524 (D.C.1989); *Harrington v. Moss,* 407 A.2d 658, 661 (D.C.1979). Indeed, plain-tiff has filed a claim for workers' compensation benefits alleging injury as a result of the January 29, 1992 incident with Moussara.

## VI

Finally, as concerns plaintiff's breach of contract claims against Hyatt, summary judgment also must be entered for defendants, for the employment relationship between plaintiff and Hyatt was terminable at will. *Elliott v. Healthcare Corp.,* 629 A.2d 6 (D.C.1993). This rule of law is not overcome by the assertion that Hyatt was under a duty not to discriminate, for that assertion cannot rise higher than plaintiff's Title VII claim.

## VII

For the reasons stated, defendants' motion for summary judgment will be granted, and the complaint will be dismissed. An Order is being issued contemporaneously herewith.

---

1. These claims consist of assault and battery, intentional infliction of emotional distress, and negligent infliction of emotional distress by both Moussara and Hyatt; and negligent hiring and supervision against Hyatt alone.