Sonya G. STEWART, Appellant,

v.

Donald L. EVANS, in his official capacity as Secretary of Commerce, et al., Appellees.

No. 01–5036.

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 19, 2001.

Decided Jan. 11, 2002.

Larry Klayman argued the cause and filed the briefs for appellant.

Kathleen A. Kane, Attorney, U.S. Department of Justice, argued the cause for appellees. With her on the brief were Kenneth L. Wainstein, U.S. Attorney at the time the brief was filed, and Marleigh D. Dover, Attorney.

Before: GINSBURG, Chief Judge, ROGERS and GARLAND, Circuit Judges.

Opinion for the Court filed by Chief Judge GINSBURG.

GINSBURG, Chief Judge:

Sonya Stewart, an employee of the Department of Commerce, sued the Secretary of Commerce and two departmental employees, alleging that another employee discriminated against her because of sex by berating her with profanity in a phone conversation, and that when she filed a complaint the Department retaliated against her in various ways, all in violation of Title VII of the Civil Rights Act of 1964. She also alleged that the two employees illegally searched her private documents pertaining to the discrimination complaint,

in violation of the Fourth Amendment to the Constitution of the United States. The district court granted the defendants' motion to dismiss.

■ We affirm the judgment of the district court dismissing the Title VII claims — sexual harassment and retaliation — for the reasons stated in the Memorandum Opinion filed by the district court and appended hereto. We reverse the judgment of the district court dismissing Stewart's Fourth Amendment claim, and remand that aspect of the case to the district court for further proceedings.

## I. Background

Sonya Stewart, an employee at the Department of Commerce, alleges that Frank DeGeorge, when he was Inspector General of the Department, berated her with a tirade of profanity in a telephone conversation on May 3, 1996. Stewart reported the incident to an equal employment opportunity counselor within the Department and eventually filed a formal complaint. Thereafter the Equal Employment Opportunity Commission investigated the situation, and the Department ultimately notified Stewart that her claim had been rejected.

According to Stewart, between the time she first reported the incident and the time she received the Department's final decision, the Acting General Counsel of the Department, Sue Esserman; the Assistant General Counsel for Administration, Barbara Fredericks; and the Chief of the Employment Law Division, Kathleen Taylor, all engaged in various acts of retaliation against her. Stewart also claims to have kept detailed notes about the initial incident and the acts of retaliation, including notes about "strategies for pursuing her claim." Stewart says she initially kept these notes and related documents in her office at the Department but later agreed to give them to John Sopko, Chief Counsel

of the Special Matters Unit, to be kept in part in a safe and in part in a locked cabinet. Stewart claims she agreed to give Sopko the documents only upon being assured that no one, including specifically Fredericks and Taylor, would see them. Fredericks and Taylor knew about this arrangement but nonetheless reviewed the files while Stewart was on sick leave in August, 1998.

In February, 2000 Stewart sued the Department under Title VII for the abusive comments and the retaliation, and sued Fredericks and Taylor under the Fourth Amendment for reading her private papers. The district court granted the defendants' motions to dismiss the claims. The court reasoned that the Civil Service Reform Act, 5 U.S.C. §§ 2301–2305, which established a system of administrative remedies for improper actions by supervisors in the federal workplace, precludes Stewart from recovering under the Fourth Amendment for the allegedly illegal search. The court also ruled that the profane tirade to which she was allegedly subjected did not constitute sex discrimination, and that none of the alleged acts of retaliation constituted an "adverse employment action" under Title VII. Stewart appeals in all respects.

## II. Analysis

■ The Civil Service Reform Act, which identifies certain prohibited "personnel actions" in the federal civil service and creates administrative remedies for the benefit of any employee subjected to such an action, by implication also precludes an aggrieved employee from suing the Government or a fellow employee for damages for engaging in such action. *Bush v. Lucas*, 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983). In *Bush*, the Supreme Court held that an employee of the federal government may not recover dam-

ages when his superior improperly disciplines him for exercising his rights under the First Amendment because "such claims arise out of an employment relationship that is governed by comprehensive procedural and substantive provisions giving meaningful remedies against the United States," referring to the CSRA. 462 U.S. at 368, 103 S.Ct. at 2406. The Court reasoned that to "creat[e] . . . a new judicial remedy for the constitutional violation at issue" would disrupt the "elaborate remedial system that has been constructed [by the Congress] step by step, with careful attention to conflicting policy considerations." *Id.* at 388, 103 S.Ct. at 2417.

■ Fredericks and Taylor maintain that if the CSRA precludes a *Bivens* action based upon an alleged violation of the First Amendment, then it must similarly preclude Stewart's *Bivens* action based upon an alleged violation of the Fourth Amendment. Stewart replies by pointing out that in footnote 28 in *Bush* the Court explicitly distinguished a warrantless search from a violation of the First Amendment: "Not all personnel actions are covered by this system. . . . [C]ertain actions by supervisors against federal employees, such as wiretapping, warrantless searches, or uncompensated takings, would not be defined as 'personnel actions' within the statutory scheme." *Id.* at 385 n. 28, 103 S.Ct. at 2415. Because, Stewart argues, a warrantless search falls outside the condemnation (and, we presume, the approbation) of the statutory scheme, that scheme cannot preclude a *Bivens* action based upon such a search. *Cf. Carlson v. Green,* 446 U.S. 14, 20–21, 100 S.Ct. 1468, 1472–73, 64 L.Ed.2d 15 (1980) (holding that the Federal Tort Claims Act does not preclude actions for violation of rights under the Constitution).

A district court in this circuit accepted the precise argument Stewart advances,

*McGregor v. Greer,* 748 F.Supp. 881, 889 (1990), but the Ninth Circuit took the opposite view in *Saul v. United States,* 928 F.2d 829, 839 (9th Cir.1991) ("We do not think the footnote [in *Bush*] was meant to decide whether every allegation that a supervisor has subjected a federal employee to a warrantless search is barred from appeal under the CSRA. Read in context, the footnote indicates only that CSRA remedies, while comprehensive, are not infinitely so"). We agree with the district court in *McGregor.* The disputed footnote in *Bush* is appended to the Supreme Court's analysis of the comprehensiveness of the statutory scheme. The Court held that the CSRA precludes a *Bivens* action based upon a violation of an employee's First Amendment rights because the statute covers such a violation (regardless whether it provides a remedy for it). By noting that a warrantless search is not a "personnel action[ ] . . . covered by this system," and stating that such a search does not fall "within the statutory scheme," *Bush* virtually compels the conclusion that the Act does not preclude a *Bivens* action for a warrantless search.

Fredericks and Taylor contend that Stewart's lawsuit should be dismissed even if it is not precluded by the CSRA, but their arguments are not persuasive. First, the defendants suggest that Stewart must exhaust her remedies under the CSRA before bringing a *Bivens* action. This makes no sense: The reason the CSRA does not preclude Stewart's lawsuit is precisely that the statute is not concerned with the conduct of which she complains; we cannot ask Stewart to exhaust an administrative remedy that does not exist.

■ Second, the defendants maintain that Stewart lacked a legitimate expectation of privacy in the places they searched — or at least that such an expectation was not clearly established — and

that the defendants are therefore shielded from liability by a qualified immunity. But the very case Fredericks and Taylor cite in support of this proposition — *O'Connor v. Ortega*, 480 U.S. 709, 107 S.Ct. 1492, 94 L.Ed.2d 714 (1987 ) — precludes dismissal of Stewart's complaint. *O'Connor* holds that an unreasonable search in the workplace violates the Fourth Amendment, and that the inquiry into reasonableness must be made on a case-by-case basis. Just as the Court in *O'Connor* remanded the matter for further proceedings because "the record was inadequate for a determination on motion for summary judgment of the reasonableness of the search and seizure," 480 U.S. at 727, 107 S.Ct. at 1502, so must we remand this case, which did not even get to the summary judgment stage. Without knowing more about the circumstances surrounding the search, a court simply cannot assess whether it was reasonable.

### III. Conclusion

For the foregoing reasons, the judgment of the district court is affirmed in part and reversed in part, and the Fourth Amendment claim is remanded to the district court for further proceedings.

*So ordered.*

### APPENDIX

Sonya Stewart, Plaintiff

v.

William Daley, in his official capacity as Secretary of Commerce, et al., Defendants

OPINION

February 6, 2001

HUVELLE, District Judge.

### MEMORANDUM OPINION

Before the Court are defendant's Motion for Judgment on the Pleadings, plaintiff's Opposition and defendant's Reply. Having considered the pleadings, the Court concludes that defendant's motion should be granted and the above complaint shall be dismissed with prejudice on the grounds that plaintiff has failed to state a cause of action for harassment and retaliation under Title VII.

### FACTUAL BACKGROUND

Ms. Sonya Stewart is employed by the Department of Commerce (DOC). In May 1996 she was the Director for Executive Budgeting and Assistance Management in the Office of the Secretary of Commerce. While there, Ms. Stewart worked with numerous DOC officials, including Frank DeGeorge, then the DOC Inspector General. Ms. Stewart alleges that prior to May 3, 1996, Mr. DeGeorge had made inappropriate sexual advances toward her and invited her out for drinks. Ms. Stewart also alleges the Mr. DeGeorge treated other females at DOC in a similar manner.

According to the complaint, on May 3, 1996, Mr. DeGeorge contacted Ms. Stewart to discuss a disbursement of $141,000 made by the DOC to the Internal Revenue Service pursuant to a tax levy imposed on a financially troubled federal assistance recipient. During the call, Ms. Stewart alleges that Mr. DeGeorge used offensive profanities, including the following: "...you're a fucking idiot...;" "...you are full of shit...;" "...can't you fucking read...;" "...fuck the goddamn memo...;" "...just between us girls...;" "...I want to know where your fucking head was at...;" and "...I don't have to listen to your fucking bullshit." Mr. DeGeorge also allegedly said that Ms. Stewart would "rue the day [she] ever did this to [him]" and that "somebody's going to pay for this." Complaint, ¶ 14.

On May 8, 1996, Ms. Stewart contacted a DOC Equal Employment Opportunity counselor regarding her telephone call with Mr. DeGeorge. On February 26, 1997, the EEOC began an investigation of Stewart's claim. Ms. Stewart alleges that other DOC officials, specifically Acting General Counsel Sue Esserman, Assistant General Counsel for Administration Barbara S. Fredericks, and Employment Law Division Chief Kathleen J. Taylor, slowed the investigation by refusing to meet with EEOC investigators. The EEOC investigation was completed on November 18, 1997. Ms. Stewart requested a final agency decision on December 11, 1997. On September 24, 1999, the DOC rejected Ms. Stewart's claim and issued a formal decision on November 24, 1999.

Ms. Stewart alleges that between May 8, 1996 and November 24, 1999, Esserman, Fredericks and Taylor retaliated against her for filing her EEO complaint. The alleged acts of reprisal included: (1) interfering with Ms. Stewart's nomination for a Presidential Rank Meritorious Award; (2) causing Ms. Stewart's removal as a recommending member of a screening panel for candidates for the DOC's Director for Civil Rights; (3) interfering with Ms. Stewart's appointment as Acting Deputy Assistant Secretary for Administration; (4) intentionally creating the appearance that Ms. Stewart was involved in violations of court orders and obstruction of justice; (5) falsely implicating Ms. Stewart in wrongdoing regarding the federal assistance recipient, Cordoba Corporation; and, (6) refusing to cooperate with the EEOC investigation of Ms. Stewart's claim.

## DISCUSSION

### I. Legal Standard

Under Fed.R.Civ.P. 12(c), a motion for judgment on the pleadings shall be granted if the moving party demonstrates that "no material fact is in dispute and that it is 'entitled to judgment as a matter of law.'" *Peters v. Nat'l R.R. Passenger Corp.*, 966 F.2d 1483, 1485 (D.C.Cir.1992) (citations omitted). In considering a motion for judgment on the pleadings, the Court should "accept as true the allegations in the opponent's pleadings" and "accord the benefit of all reasonable inferences to the non-moving party." *Haynesworth v. Miller*, 820 F.2d 1245, 1249 n. 11 (D.C.Cir. 1987) (citations omitted).

### II. Legal Analysis

#### A. Hostile Work Environment Claim

Plaintiff has conceded that her hostile work environment claim rests solely on the telephone call between herself and Mr. DeGeorge on May 3, 1996. Plaintiff's Opposition to Defendants' Motion to Dismiss, at 11–12.[1] Therefore, the allegations of prior sexual advances and inappropriate

---

1. At a hearing before this Court on September 5, 2000, plaintiff's counsel made clear that plaintiff was not relying on the evidence set forth in ¶ 9 of her complaint to make a claim for sexual harassment. Further, in plaintiff's Opposition to Defendant's Motion to Dismiss, at 11–12 (filed on June 30, 2000), plaintiff's counsel stated that plaintiff was seeking damages based on the May 3, 1996 telephone conversation only ("The basis of her claim — both at the administrative level and before this Court — was and remains the hostile work environment created by DeGeorge as demonstrated by the abusive and violent and discriminatory language he used against Ms. Stewart during the May 3, 1996 telephone conversation."). On the basis of these explicit representations, at the September 5 hearing this Court put plaintiff on clear notice:

   The basis of [plaintiff's] lawsuit is May 3rd. They are standing on the position that that event constitutes sexual harassment. And if they are wrong as a matter of law or factually, then so be it. They are not entitled to recover.

   Transcript, at 25–26.

conduct can serve only as background information, and Ms. Stewart's claim can only succeed if the telephone call outlined in her EEO complaint satisfies the requirements of sexual harassment.

Title VII does not prohibit all forms of workplace harassment, only those directed at discrimination because of sex. *See Oncale v. Sundowner Offshore Serv., Inc.,* 523 U.S. 75, 80, 118 S.Ct. 998, 1002, 140 L.Ed.2d 201 (1998). Furthermore, workplace harassment does not violate Title VII merely because the "words used have sexual content or connotation," but only if members of one sex are disadvantaged in the terms or conditions of their employment because of the harassment. *Id.* Title VII is not a "general civility code for the American workplace," *id.* at 80, 118 S.Ct. at 1002 nor does it serve as a remedy for all instances of verbal or physical harassment, for it does not "purge the workplace of vulgarity." *Baskerville v. Culligan Int'l Co.,* 50 F.3d 428, 430 (7th Cir.1995).

Applying these principles to the facts as set forth by plaintiff, the Court concludes that Mr. DeGeorge's language during their telephone conversation cannot reasonably be construed as having any sexual connotation or having been motivated by a discriminatory animus. By plaintiff's own admission, Mr. DeGeorge "reacted angrily concerning a disbursement of approximately $141,000 to the IRS on behalf of Cordoba." Compl. ¶ 12. There is, however, nothing to support or corroborate plaintiff's assertion that DeGeorge's inappropriate behavior constituted harassment based on Ms. Stewart's sex. On the contrary, it is undisputed that Mr. DeGeorge was enraged with plaintiff's handling of the Cordoba matter because of her failure to obtain written approval for the disbursement from his office. As a result, he used offensive and inappropriate language while speaking with Ms. Stewart. However, there is no basis upon which to infer from the telephone call that Mr. DeGeorge's hostility was motivated by Ms. Stewart's sex. In *Neuren v. Adduci, Mastriani, Meeks & Schill,* the D.C. Circuit held that a supervisor's use of vulgarity in an employee's performance evaluation was "obviously grounded in gender-neutral concerns about [plaintiff's] interpersonal relations with co-workers, rather than discriminatory considerations." 43 F.3d 1507, 1513 (D.C.Cir.1995). Similarly, DeGeorge's use of profanity in the May 3rd telephone conversation reflected gender-neutral concerns about Ms. Stewart's mishandling of the Cordoba disbursement, and as noted, Title VII does not provide a cause of action for "ordinary tribulations of the workplace." *Faragher v. City of Boca Raton,* 524 U.S. 775, 788, 118 S.Ct. 2275, 2284, 141 L.Ed.2d 662 (1998).

Even if Mr. DeGeorge's use of profane language could arguably be characterized as sexual harassment, which it cannot, a single telephone call is not sufficiently severe and pervasive to constitute a hostile work environment. The D.C. Circuit has held that "not all abusive behavior, even when it is motivated by discriminatory animus, is actionable. Rather a workplace environment becomes hostile for the purposes of Title VII only when offensive conduct 'permeate[s] [the workplace] with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment.'" *Barbour v. Browner,* 181 F.3d 1342, 1347–48 (D.C.Cir.1999) (quoting *Oncale,* 523 U.S. 75, 118 S.Ct. 998).

In determining whether harassment rises to this level, courts should consider the frequency of the harassing conduct, its severity, whether it is physically threatening or humiliating, and whether it unrea-

sonably interferes with an employee's work performance. *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21–23, 114 S.Ct. 367, 370–71, 126 L.Ed.2d 295 (1993). Except in extreme circumstances, courts have refused to hold that one incident is so severe to constitute a hostile work environment. *See Tatum v. Hyatt Corp.,* 918 F.Supp. 5, 7 (D.D.C.1994) (citations omitted). Even a few isolated incidents of offensive conduct do not amount to actionable harassment. *See, e.g., Hopkins v. Baltimore Gas & Electric Co.,* 77 F.3d 745, 753 (4th Cir.1996) (holding that the fact that alleged incidents were spread over a seven-year period suggested that the harassment was not sufficiently pervasive to established Title VII liability); *Baskerville,* 50 F.3d at 430 (holding that nine incidents spread over seven months did not constitute sexual harassment because the supervisor never touched employee and incidents were not sufficiently severe or pervasive).

Applying these principles to plaintiff's claim of sexual harassment, it is clear that plaintiff cannot, as a matter of law, prove a prima facie case. To maintain a hostile work environment claim, Ms. Stewart must prove that the discriminatory conduct was "sufficiently severe and pervasive to alter the conditions of [her] employment and create an abusive working environment." *Harris,* 510 U.S. at 23, 114 S.Ct. at 371. Ms. Stewart's claim amounts to only one isolated incident of alleged sexual harassment. In *Tatum,* this court held that an isolated incident did not so alter the plaintiff's employment conditions as to create a hostile work environment. *See* 918 F.Supp. at 7. In that case, the plaintiff's co-worker unexpectedly wrapped his arms around the plaintiff's neck and body, rubbed against her as if to simulate sex, made comments about her physical attrac-

tiveness, and placed a piece of ice in plaintiff's skirt pocket. *Id.* at 6. While the offending employee's actions were deplorable, the court held that this incident, without more, did not create a hostile work environment. *Id.* at 7.

The harassment complained of here is not nearly as serious as the incident alleged in *Tatum.* Mr. DeGeorge did not physically accost Ms. Stewart. His verbal barrage of profanity was not sexually suggestive in any way or otherwise related to or caused by plaintiff's gender. Ms. Stewart's claim of hostile work environment must, therefore, fail for the alternative reason that the incident complained of is not the type of severe and pervasive sexual harassment prohibited by Title VII.

### B. Retaliation Claim

Ms. Stewart alleges that the defendant retaliated against her in violation of Title VII. In order to state a prima facie case of retaliation, plaintiff must demonstrate: (1) that she engaged in a statutorily protected activity; (2) that the employer took an adverse personnel action; and (3) that a causal connection existed between the two. *Brown v. Brody,* 199 F.3d 446, 452 (D.C.Cir.1999). To establish an adverse personnel action in the absence of diminution of pay or benefits, plaintiff must show an action with "materially adverse consequences affecting the terms, conditions, or privileges of employment." *Id.* at 457. An "employment decision does not rise to the level of an actionable adverse action ... unless there is a tangible change in the duties or working conditions constituting a material employment disadvantage." *Walker v. WMATA,* 102 F.Supp.2d 24, 29 (D.D.C.2000) (citation omitted); *see also Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 118 S.Ct. 2257, 2268–69, 141 L.Ed.2d 633 (1998) ("A tangible employment action constitutes a significant change in employment status, such as hir-

ing, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.").

Plaintiff contends that she suffered six different acts of retaliation. First, she alleges that Ms. Esserman, Ms. Fredericks, and Ms. Taylor, of the General Counsel's Office, interfered with and attempted to block her nomination for a Presidential Rank Meritorious Award. However, Ms. Stewart successfully obtained this Award for which she was nominated. Even if the Court accepts as true Ms. Stewart's allegation that the members of the General Counsel's Office attempted to block her nomination and selection for this award, Title VII does not provide relief for victims of attempted retaliation. Ms. Stewart suffered no adverse employment action as a result of any interference by Esserman, Fredericks, and Taylor.

Second, plaintiff alleges that Esserman, Fredericks, and Taylor caused her removal from a panel established to select and interview candidates for the position of Director of the Office of Civil Rights. The D.C. Circuit has held that minor changes in work-related duties or opportunities do not constitute an actionable injury unless they are accompanied by some other adverse change in the terms, conditions or privileges of employment. *See Brown,* 199 F.3d at 457 (holding that lateral transfer or the denial thereof, without more, does not constitute an adverse employment action); *Mungin v. Katten Muchin & Zavis,* 116 F.3d 1549, 1557 (D.C.Cir.1997) ("changes in assignments and work-related duties do not ordinarily constitute adverse employment decisions if unaccompanied by a decrease in salary or work hour changes"). "Mere inconveniences and alteration of job responsibilities will not rise to the level of adverse action." *Childers v. Slater,* 44 F.Supp.2d 8, 19 (D.D.C.1999).

Even accepting as true, as we must at this stage, Ms. Stewart's allegation that her removal from the panel was an act of reprisal, this does not rise to the level of an adverse employment action as contemplated by Title VII, because there was no change in Ms. Stewart's job position, grade, pay, or benefits.

Third, plaintiff claims that Esserman, Fredericks, and Taylor interfered with and delayed her appointment as Acting Deputy Assistant Secretary for Administration and caused her responsibilities and duties in that job to be diminished. Again, however, Ms. Stewart successfully achieved the position of Acting Deputy Assistant Secretary. Even if the three OGC members had succeeded in denying Ms. Stewart this designation, the D.C. Circuit has held that this type of temporary designation is not one of the terms, conditions, or privileges of employment contemplated by Title VII. *See Taylor v. FDIC,* 132 F.3d 753, 764 (D.C.Cir.1997) (interpreting identical language in a Whistleblower Act in light of Title VII precedent). Because denial of this type of temporary designation is not an adverse employment action, mere interference with or delay of such a designation cannot be a cognizable harm under Title VII. Plaintiff also claims that the three members of OGC caused her duties and responsibilities as Acting Deputy Assistant Secretary to be diminished. However, because, according to *Taylor,* the outright denial of a temporary position cannot constitute an adverse employment action, diminished responsibilities in that position cannot be sufficient to state a claim for retaliation under Title VII.

Fourth, Ms. Stewart contends that the three OGC members intentionally and perfidiously created the appearance that the plaintiff and her staff were involved in violations of court orders and obstruction of justice. Plaintiff appears to allege that

her public perception was damaged by the actions of Esserman, Fredericks, and Taylor. However, this claim is not pled with particularity. Moreover, this Court has held that "false accusations without negative employment consequences are not employment decisions actionable under Title VII." *Childers,* 44 F.Supp.2d at 20. Furthermore, public humiliation or loss of reputation does not constitute an adverse employment action under Title VII. *See Spring v. Sheboygan Area School Dist.,* 865 F.2d 883, 885 (7th Cir.1989); *Probst v. Reno,* 2000 WL 1372872 (N.D.Ill. Sept.22, 2000); *Wanamaker v. Columbian Rope Co.,* 907 F.Supp. 522, 535 (N.D.N.Y.1995), *aff'd,* 108 F.3d 462 (2d Cir.1997). Plaintiff has not alleged any adverse employment action resulting from her being unfairly blamed for violations of court orders or obstruction of justice which would constitute retaliation under Title VII.

Fifth, Ms. Stewart alleges that Esserman, Fredericks, Taylor retaliated against her by preparing and publicly issuing a report on the Cordoba matter that falsely implicated Ms. Stewart and her staff in wrongdoing. This Court has held that formal criticisms or reprimands, without additional disciplinary action such as a change in grade, salary, or other benefits, do not constitute adverse employment actions. *See Childers,* 44 F.Supp.2d at 20. Plaintiff has not alleged that the report of the Cordoba matter in any way affected her job performance ratings or the conditions of her employment. Because this report had no effect on Ms. Stewart's pay, benefits, or privileges, it cannot be considered an adverse employment action under Title VII.

Finally, Ms. Stewart alleges that Esserman, Fredericks, and Taylor retaliated against her by refusing to cooperate with the EEOC investigation of her complaint against Mr. DeGeorge, resulting in a delay in the issuance of a final decision on her administrative complaint. The D.C. Circuit has held that an adverse personnel action under Title VII must have some negative consequences with respect to the plaintiff's employment. *See Jolly v. Listerman,* 672 F.2d 935, 953 (D.C.Cir.1982); *Childers,* 44 F.Supp.2d at 19. Therefore, this Court has concluded that, because an agency's failure to issue a final decision on a plaintiff's EEO complaint within 60 days has no discernable negative consequences for plaintiff's employment, it is not an actionable adverse action. *Kilpatrick v. Riley,* 98 F.Supp.2d 9, 24 (D.D.C.2000). Furthermore, if the agency fails to issue a timely final decision, plaintiff has the right to file suit in district court after 180 days from the date of the filing of the administrative complaint. *See id.* Like the plaintiff in *Kilpatrick,* Ms. Stewart had the option of filing a civil action in district court if she were dissatisfied with the agency's handling of her administrative complaint. Moreover, the delay in adjudicating the complaint had no impact on Ms. Stewart's grade, pay, or benefits. Therefore, even if the Court assumes that IGC members refused to cooperate with the EEOC investigation, this action had no materially adverse consequences for Ms. Stewart's employment.

## CONCLUSION

For the foregoing reasons, the Court concludes that the plaintiff has failed to establish a prima facie case with respect to either hostile work environment or retaliation under Title VII. Accordingly, judgment is entered for the defendant. A separate order accompanies this Memorandum Opinion.