Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

## FOR THE DISTRICT OF COLUMBIA CIRCUIT

————

Argued November 7, 2003        Decided December 19, 2003

No. 02-5391

SONYA G. STEWART,
APPELLANT

v.

DONALD L. EVANS, SECRETARY OF COMMERCE, ET AL.,
APPELLEES

————

Appeal from the United States District Court
for the District of Columbia
(No. 00cv01241)

————

*Dale L. Wilcox* argued the cause for appellant. On the briefs were *Larry Klayman* and *Paul J. Orfanedes*.

*Richard Montague*, Attorney, U.S. Department of Justice, argued the cause for appellees. With him on the brief were *Peter D. Keisler*, Assistant Attorney General, *Roscoe C. Howard, Jr.*, U.S. Attorney, and *Barbara L. Herwig*, Assistant

————

Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

Director, U.S. Department of Justice. *Dennis C. Barghaan, Jr.* and *Marleigh D. Dover*, Attorneys, entered appearances.

Before: RANDOLPH and ROBERTS, *Circuit Judges,* and WILLIAMS, *Senior Circuit Judge*.

ROBERTS, *Circuit Judge*: Appellant Sonya Stewart, a Department of Commerce employee, sued two Department of Commerce attorneys in their personal capacities for money damages under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). Stewart asserts that the attorneys violated her Fourth Amendment rights by reviewing certain documents she had compiled and kept at work. Stewart had turned the documents over to other agency officials who needed to determine their responsiveness to Freedom of Information Act and congressional requests, but had done so subject to an agreement that the documents not be provided to the attorneys. The district court granted the attorneys' motion for summary judgment, dismissing the case. We affirm.

## I. Background

### A. Factual History

Appellant Sonya Stewart, at the pertinent time an employee at the Department of Commerce, alleges that then-Inspector General Frank DeGeorge subjected her to a profanity-laced tirade of verbal abuse and threats during a telephone conversation on May 3, 1996. After her reports to high-level Department officials about DeGeorge's abusive conduct failed to generate any response, Stewart filed a formal complaint with the Department's Office of Civil Rights (OCR), alleging gender-based discrimination and retaliation. In that complaint, she alleged that DeGeorge's abusive conduct had created a hostile work environment, and that employees in the Department's Office of General Counsel (OGC) had participated in a scheme to stonewall her charges against DeGeorge and to retaliate against her.

The Department referred the complaint to the Equal Employment Opportunity Commission for investigation. The

EEOC completed its investigation and prepared a Report of Investigation (ROI). An ROI contains the investigator's summary of the evidence, as well as the complaint, testimony, affidavits, and any pertinent correspondence and documents. One copy of the ROI was given to Stewart, one to the Department. Stewart kept her copy in a locked drawer in her office, along with what she described as "voluminous notes and other documents regarding the May 3, 1996 incident, the Commerce Department's stonewalling and obstruction, and the subsequent acts of retaliation against her." Compl. ¶ 26. The Department ultimately rejected Stewart's claims of gender-based discrimination and retaliation.

The documents compiled by Stewart first became an issue in January 1998, when the Department received a Freedom of Information Act request from the *Washington Post*. The request sought any documents "involving or related to Frank DeGeorge," Letter from Stephen Barr, *Washington Post* Staff Writer, to Brenda Dolan, Department of Commerce FOIA Officer (Jan. 12, 1998), specifically naming documents made or compiled by Stewart. Although believing her documents might be responsive, Stewart balked at allowing them to be reviewed by the Department in response to the FOIA request. She feared that during such a review OGC attorneys would gain access to her documents, which contained accusations of wrongdoing by OGC staff, and to her work product relating to her complaint against the Department. Pursuant to an agreement with the Assistant Secretary for Administration, Scott Gould, Stewart turned the documents over to Brenda Dolan, the Department's FOIA officer, for review, on the condition that no personnel from OGC have access to them. The documents were ultimately not provided to the *Washington Post*.

The Department received another request for documents pertaining to DeGeorge in February 1998, this time from Senator Charles Grassley. Again, believing that her documents might be responsive, but concerned about possible OGC access, Stewart brokered another agreement to permit review of her documents. Pursuant to this agreement, Stewart transferred her documents to John Sopko — head of the

Special Matters Unit (SMU), a component of OGC that handled requests for information from Congress — on the conditions that no other personnel from OGC would have access to them, and that they would be secured in a locked safe within the SMU. But when both Sopko and Stewart were on sick leave, appellee Kathleen Taylor, Chief of the Employment Law Division (allegedly acting under the direction of her supervisor, appellee Barbara Fredericks, Assistant General Counsel for Administration) gained access to the safe and reviewed the documents. After subsequent review by SMU staff found the documents to be responsive to Senator Grassley's request, the Department provided all the documents to Congress.

## B. Procedural History

In February 2000, Stewart sued the Secretary of Commerce in his official capacity for sexual harassment and retaliation in violation of Title VII of the Civil Rights Act of 1964, and sued Fredericks and Taylor in their personal capacities for Fourth Amendment violations under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). The basis for the latter claim was Taylor's unauthorized review of Stewart's documents in the SMU. After transfer from the Eastern District of Virginia, the district court dismissed the entire action under Federal Rule of Civil Procedure 12(b)(6), concluding that the allegations did not state a violation of Title VII, and that the administrative remedies provided by the Civil Service Reform Act (CSRA), 5 U.S.C. §§ 2301–2303, precluded Stewart's Fourth Amendment claims against Fredericks and Taylor.

Stewart appealed to this court. We affirmed the dismissal of the Title VII claims but reversed the dismissal of the *Bivens* action, holding that the CSRA did not bar Stewart's Fourth Amendment claims. *Stewart v. Evans*, 275 F.3d 1126 (D.C. Cir. 2002). This court declined to consider defendants' arguments that "Stewart lacked a legitimate expectation of privacy in the places they searched — or at least that such an expectation was not clearly established — and that the defendants are therefore shielded from liability by a qualified

immunity," noting that the record was inadequate in the case, "which did not even get to the summary judgment stage." *Id.* at 1130–31. As the court explained, "[w]ithout knowing more about the circumstances surrounding the search, a court simply cannot assess whether it was reasonable." *Id.* at 1131.

On remand, Fredericks and Taylor moved for summary judgment. Stewart opposed the motion on two grounds: (1) the existence of genuine issues of material fact, and (2) the need to conduct discovery under Rule 56(f) in order to oppose the motion. The parties submitted affidavits, with exhibits, in support of their respective positions concerning the motion. After hearing oral argument, the district court granted summary judgment in favor of Fredericks and Taylor. The court ruled that Stewart had no legitimate expectation of privacy in the documents she had turned over to the other Department officials, and therefore no protected Fourth Amendment interest. The court went on to rule that Fredericks and Taylor were in any event entitled to qualified immunity, because no clearly established Fourth Amendment right had been violated. The court declined to permit discovery. Stewart again appeals.

## II.  Analysis

### A.  Fourth Amendment Claim

Stewart asserts that she had a reasonable expectation of privacy in her documents, and that Taylor's examination of those documents in contravention of the non-disclosure agreement violated the Fourth Amendment. In addition, she argues that her Fourth Amendment right was clearly established — defeating any claim of qualified immunity — because *O'Connor v. Ortega*, 480 U.S. 709 (1987), had confirmed that government employees enjoy a reasonable expectation of privacy in personal documents kept at the workplace.

"A court evaluating a claim of qualified immunity must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all, and if so, proceed to determine whether that right was clearly established at the

time of violation." *Wilson v. Layne*, 526 U.S. 603, 609 (1999) (internal quotation marks omitted). The constitutional question generally should be decided first to "promote[ ] clarity in the legal standards for official conduct, to the benefit of both the officers and the general public." *Id.* We accordingly must first determine, applying the usual summary judgment standards, whether Stewart has shown a violation of her Fourth Amendment rights.

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures shall not be violated. . . ." The Supreme Court has explained that "[t]he touchstone of Fourth Amendment analysis is whether a person has a 'constitutionally protected reasonable expectation of privacy.' " *California v. Ciraolo*, 476 U.S. 207, 211 (1986) (quoting *Katz v. United States*, 389 U.S. 347, 360 (1967) (Harlan, J., concurring)). Without a reasonable expectation of privacy, "a Fourth Amendment search does *not* occur." *Kyllo v. United States*, 533 U.S. 27, 33 (2001).

"[T]he reasonableness of an expectation of privacy . . . is understood to differ according to context. . . ." *O'Connor*, 480 U.S. at 715 (plurality opinion). In this case, whether Stewart had a protected Fourth Amendment interest depends upon the reasonableness of her expectation of privacy with respect to both the documents themselves, and the area searched. *See United States v. Salvucci*, 448 U.S. 83, 93 (1980) ("[W]e must . . . engage in a conscientious effort to apply the Fourth Amendment by asking not merely whether the defendant had a possessory interest in the items seized, but whether he had an expectation of privacy in the area searched." (internal quotation marks omitted)).

Stewart claims that she had a reasonable expectation of privacy in the SMU safe — the location of the documents at the time of the search. But Stewart had no control whatever over access to the office containing the safe or to the safe itself. Stewart argues that because the documents were secured under lock and key, she was entitled to the workplace expectation of privacy established in *O'Connor*. In *O'Connor*,

however, the documents in question were kept under the exclusive control of the claimant, who secured the documents in *his* desk and file cabinets, within *his* office, which he did not share with any other employees. 480 U.S. at 718. *O'Connor* concerned "[p]ublic employees' expectation of privacy in *their* offices, desks, and file cabinets," *id.* at 717 (plurality opinion) (emphasis added), and offers little support for the reasonableness of such expectations with respect to the offices of *other* employees.

Here the documents were in the SMU, and not Stewart's office, because she had voluntarily relinquished control of them. On two separate occasions — the Dolan review and the SMU review — Stewart gave the documents to third parties. *See Smith v. Maryland*, 442 U.S. 735, 743–44 (1979) ("This Court consistently has held that a person has no legitimate expectation of privacy in information he voluntarily turns over to third parties."); *United States v. Scios*, 590 F.2d 956, 991 (D.C. Cir. 1978) ("Individuals . . . ordinarily have no recognized privacy interest in information disclosed by them to or otherwise possessed by third parties."); *United States v. Knoll*, 16 F.3d 1313, 1321 (2d Cir. 1994).

The *reason* Stewart transferred the documents is highly pertinent. In each instance her transfer was the first step in a process that could — and, in the case of the SMU review, did — result in broader disclosure of the documents, beyond even the third parties to whom Stewart conveyed them. When the threat of mandatory disclosure accompanies the transfer of documents to a third party, little reasonable expectation of privacy exists. *See Couch v. United States*, 409 U.S. 322, 335 (1973) ("[T]here can be little expectation of privacy where records are [transferred] . . . knowing that mandatory disclosure of much of the information therein is required . . . .").

Stewart argues, however, that the agreement she brokered with Gould, restricting access to the documents, preserves her expectation of privacy. But Stewart herself asserts that "the very purpose of the agreement was to prevent OGC, and Fredericks and her staff in particular," from reviewing the

documents, Stewart Decl. ¶ 14 — not to preserve their privacy more generally. The documents could be and were accessed by other Department employees. Facilitating such access was the whole point of turning them over. The Fourth Amendment protects privacy; it does not constitutionalize non-disclosure agreements. "This Court has held repeatedly that the Fourth Amendment does not prohibit the obtaining of information revealed to a third party . . . even if the information is revealed on the assumption that it will be used only for a limited purpose and the confidence placed in the third party will not be betrayed." *United States v. Miller*, 425 U.S. 435, 443 (1976).

Based on the circumstances surrounding the storage and transfer of her documents within the Department, we find that Stewart had no reasonable expectation of privacy in either the documents or the SMU safe. We accordingly hold that Stewart has not alleged a violation of the Fourth Amendment. Having found no constitutional violation, "there is no necessity for further inquiries concerning qualified immunity." *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

## B. Discovery

Stewart also contends that the district court erred in dismissing her Fourth Amendment claim without granting discovery. She first asserts that the remand in *Stewart v. Evans*, 275 F.3d 1126 (D.C. Cir. 2002), required the district court to conduct discovery. When this case was first before us, we declined to rule on appellees' qualified immunity claim, explaining that the case "did not even get to the summary judgment stage" and that "[w]ithout knowing more about the circumstances surrounding the search, a court simply cannot assess whether it was reasonable." *Id.* at 1131. We accordingly remanded the case "for further proceedings," but made no reference to any need to conduct discovery, or specified how the district court was to proceed. *Id.*

Contrary to Stewart's contention that "there has been no new factual development in this case," Appellant's Br. at 17, the record before the district court on summary judgment was significantly more developed than it had been at the

pleading stage, when we decided the first appeal. For example, the record now contains affidavits from Stewart, Taylor, Fredericks, Dolan, Sopko, and Gould, as well as other Department employees, the parties' respective statements of material facts not or in dispute, and numerous exhibits appended to each of these items. These documents establish several undisputed facts not evident from the complaint: (1) Stewart gave the disputed documents to Dolan for review in response to the *Washington Post* FOIA request; (2) Dolan reviewed the documents for responsiveness; (3) Stewart gave the documents to Sopko for review in response to Senator Grassley's request; and (4) SMU reviewed the documents and eventually produced them to Congress.

In any event, our brief discussion of the record in the first appeal simply noted that we lacked sufficient information "about the circumstances surrounding the search ... [to] assess whether it was reasonable." 275 F.3d at 1131. A warrantless search violates the Fourth Amendment if (1) there is a reasonable expectation of privacy in the place or object searched, creating a protected Fourth Amendment interest, and (2) the search is unreasonable under Fourth Amendment standards. *See, e.g.*, *O'Connor*, 480 U.S. at 715–24; *United States v. Chadwick*, 433 U.S. 1, 11–12 (1977); *Terry v. Ohio*, 392 U.S. 1, 8–9 (1968). On remand, the district court found that Stewart had no reasonable expectation of privacy in the documents, *see* Motion Hearing Tr. at 45 ("[T]o say that ... society is prepared to accept [Stewart's] expectation as a legitimate Fourth Amendment right is way beyond the jurisprudence that I can locate."), thereby concluding that she had no protectable Fourth Amendment interest. Consequently, the district court had no need to reach the question of whether the search was reasonable — the only point on which we had expressed concern about the adequacy of the record on the first appeal. The district court did not contravene our prior opinion in deciding the case on the basis it did without conducting discovery.[1]

---

[1] Our prior opinion had noted that "[j]ust as the Court in *O'Connor* remanded the matter for further proceedings because 'the

Stewart finally argues that the district court erred by not granting discovery under Rule 56(f).[2] This court reviews a district court's refusal to allow discovery under an abuse of discretion standard. *Information Handling Servs., Inc. v. Defense Automated Printing Servs.*, 338 F.3d 1024, 1032 (D.C. Cir. 2003). Like the district court, we fail to discern how discovery would shed any different light on the undisputed facts central to this case: (1) Stewart had no control over the area searched — it was not her desk or even her office; (2) Stewart on two occasions turned the documents over to third parties, and they were removed from her office; (3) she did so for the very purpose of potential production under FOIA and potential production in response to a congressional request; and (4) the Department produced the documents to Congress. No amount of discovery could alter the undisputed facts that demonstrate Stewart had no reasonable expectation of privacy, and consequently no Fourth Amendment claim. The district court was well within the bounds of its discretion to deny discovery.

### III. Conclusion

We affirm the district court's grant of summary judgment.

record was inadequate for a determination on motion for summary judgment of the reasonableness of the search and seizure,' so must we remand this case. . . ." 275 F.3d at 1131 (quoting 480 U.S. at 727) (citation omitted). The Supreme Court in *O'Connor*, however, considered whether the search was reasonable only after having found that there was a reasonable expectation of privacy. *See* 480 U.S. at 719.

[2] Rule 56(f) provides that a court "may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had" if it "appear[s] from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition." Fed. R. Civ. P. 56(f).