OPINION
Bonnie Hale appeals from a judgment of the Montgomery County Court of Common Pleas, which granted summary judgment in favor of the City of Dayton, Jack Balazs, and Larry Collins.
In August of 1998, Balazs, a firefighter for the City of Dayton, used his personal home computer to view images of nude overweight women on the internet. He downloaded a picture of a naked, overweight woman who resembled Hale onto his laptop computer and took the laptop to the firehouse where he worked. Hale was a paramedic with the City of Dayton. She and Balazs were co-workers, with no supervisory relationship between them, and were in different companies within the fire department. Balazs was assigned to Company Twelves, and Hale was assigned to Company Eights.
After taking the picture, which was stored on his laptop, to the firehouse, Balazs showed it to as many as fifteen of his coworkers during at least two days in August and September of 1998. These coworkers included members of his crew in Company Twelves, various firefighters from Company Eights, and various firefighters from Company Fifteens. Balazs also called at least one person to the firehouse for the specific purpose of viewing the image. Some of the firefighters who viewed the image stated that Balazs had asked "Does this look like anybody you know?" or "Doesn't this look like a Dayton Paramedic? Doesn't this look like Bonnie [Hale]?" Others stated that he had told them to come look at the screen. Most of the firefighters viewing the image noted that it resembled Hale.
The firefighters who viewed the image included at least three lieutenants,[1] who are supervisory personnel at the fire department. None of the three lieutenants who viewed the image reported it to their superiors or took any action to stop Balazs' conduct. At least one of these supervisors, Lt. Pat Connaughton, agreed with Balazs that the picture resembled Hale. Another, Lt. Phil Plummer, saw that it was a picture of a nude woman but could not say who it resembled because he was not wearing his glasses. The third, Lt. James Cox, received an email of the picture from Balazs. He had heard that there was a picture of a nude female resembling a paramedic on the internet and had heard Hale's name in connection with the rumor. Cox mentioned the rumor at a union bargaining session at which Hale was present on September 12, 1998. Hale had not been aware of the picture before this time. Cox was unable to open the email from Balazs but gave a paramedic, Harry Hageman, permission to try to download the image from Cox's email. Hageman was able to download the image, and he did so at Hale's request.
Hale reported Balazs' conduct to her supervisor, Lt. John Strukamp, on September 15, 1998. Strukamp contacted his superior, District Chief Fleming. Both men noted that Hale was crying, very upset, and unfit for duty. She was referred to the City of Dayton Employee Care and later told to go home. Hale was then placed on sick-leave and began receiving psychological treatment for depression. She was also prescribed medication. For a period of time following the incident, Hale had difficulty performing basic daily tasks and working. She never resumed her job at the fire department but eventually went back to work at the part-time jobs she had already held.
The fire department began an investigation of Balazs, which resulted in his admission to the allegations. The city initiated disciplinary proceedings against Balazs, who retired effective October 30, 1998 to avoid being fired.
Hale filed her complaint on November 16, 1998 against the City of Dayton, various city officials, and Balazs. Against all defendants, she alleged hostile work environment sexual harassment in violation of R.C.4112.02, defamation, and invasion of privacy. Following some discovery, the city and Balazs filed motions for summary judgment on March 6 and March 8, 2000, respectively. Hale filed an amended complaint on June 12, 2000, adding claims of intentional and negligent infliction of emotional distress against Balazs and adding Collins, who was the chief of the fire department, as a defendant. On June 29, Collins filed a motion for summary judgment. On August 21, Balazs filed a motion for summary judgment on the intentional and negligent infliction of emotional distress claims. The trial court granted summary judgment in favor of all defendants[2] on March 14, 2001.
Hale raises four assignments of error on appeal.
 I. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY GRANTING THE DEFENDANT-APPELLEES' MOTIONS FOR SUMMARY JUDGMENT ON THE ISSUE OF SEX HARASSMENT/HOSTILE WORK ENVIRONMENT, A FORM OF SEX DISCRIMINATION.
Under this assignment of error, Hale argues that the trial court erred in granting summary judgment to the city, Balazs, and Collins on her hostile work environment sexual harassment claim.
Our review of the trial court's decision to grant summary judgment is de novo. See Helton v. Scioto Cty. Bd. of Commrs. (1997),123 Ohio App.3d 158, 162. Civ.R. 56(C) provides that summary judgment may be granted when the moving party demonstrates that (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made. See State ex rel. Grady v. State Emp. Relations Bd. (1997), 78 Ohio St.3d 181, 183; Harless v. Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64, 65-66.
This action was brought under R.C. Chapter 4112, which is Ohio's counterpart to Section 2000e, Title 42, U.S. Code ("Title VII"). Federal case law interpreting Title VII is generally applicable to cases brought under Chapter 4112. See Genaro v. Cent. Transport, Inc. (1999),84 Ohio St.3d 293, 295; Plumbers Steamfitters Commt. v. Ohio Civil Rights Comm. (1981), 66 Ohio St.2d 192, 196.
Initially, we must determine whether Balazs and Collins can be personally liable under R.C. Chapter 4112. Balazs argues that Chapter 4112 does not provide for individual liability for co-workers. We agree. Chapter 4112 provides for employer liability for employment discrimination. R.C. 4112.01(A)(2) defines "employer" as "* * * any person employing four or more persons within the state, and any person acting directly or indirectly in the interest of an employer." The Supreme Court of Ohio has held that this definition of "employer" includes supervisors and managers. See Genaro, supra, at 300. However, we do not believe that it includes co-workers. In this case, Balazs was not Hale's supervisor in any way. He was merely a co-worker.[3] While he may be personally liable for his conduct under another theory of law, he cannot be liable under Chapter 4112 because he is not an employer. Therefore, the trial court did not err in granting summary judgment in favor of Balazs on Hale's hostile work environment claim.
Regarding the personal liability of Collins, the city argues that, as a supervisor, he can be liable under Genaro only for his own discriminatory acts, not for those of Balazs. Again, we agree. Genaro cannot be read to impose personal liability on supervisors for the discriminatory acts of their employees. Hale has not alleged that Collins himself committed any discriminatory acts against her or even that he furthered Balazs in his actions. She has alleged only that Collins should be vicariously liable for the acts of Balazs.[4] We do not believe that such liability is contemplated by Chapter 4112 or Genaro. Therefore, the trial court did not err in granting summary judgment in favor of Collins on Hale's hostile work environment claim.
We are thus left with the question of whether the trial court erred in granting summary judgment in favor of the City of Dayton on Hale's hostile work environment claim. The Supreme Court of Ohio has set forth the elements required to establish a prima facie case of hostile work environment sexual harassment under Ohio law:
 In order to establish a claim of hostile-environment sexual harassment, the plaintiff must show (1) that the harassment was unwelcome, (2) that the harassment was based on sex, (3) that the harassing conduct was sufficiently severe or pervasive to affect the "terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment," and (4) that either (a) the harassment was committed by a supervisor, or (b) the employer, through its agents or supervisory personnel, knew or should have known of the harassment and failed to take immediate and appropriate corrective action.
Hampel v. Food Ingredients Specialties, Inc. (2000), 89 Ohio St.3d 169,176-77. The parties do not appear to dispute that Balazs' conduct was unwelcome, so we will turn to a discussion of the remaining three elements.
The second element requires Hale to establish that the harassment was based on sex. In Hampel, the supreme court noted that "any harassment or other unequal treatment of an employee or group of employees that would not occur but for the sex of the employee or employees may, if sufficiently patterned or pervasive, comprise an illegal condition of employment." Id. at 179, quoting McKinney v. Dole (C.A.D.C. 1985),765 F.2d 1129, 1138-39. We reject the city's characterization of Balazs' behavior as generalized joking directed toward males and females alike. While such joking may very well have been prevalent, there is no evidence in the record to indicate that the generalized joking ever involved naked pictures as in this case. Thus, unless Balazs was in the habit of displaying naked pictures of men resembling male firefighters, we have little difficulty finding that Balazs' conduct would not have occurred but for the fact that Hale is a woman.
Under the third element, Hale is required to show that the harassing conduct was sufficiently severe or pervasive to affect the terms, conditions, or privileges of her employment. We must consider the totality of the circumstances:
 [W]hether an environment is "hostile" or "abusive" can be determined only by looking at all the circumstances. These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.
Hampel, supra, at 180, quoting Harris v. Forklift Sys., Inc. (1993),510 U.S. 17, 23, 114 S.Ct. 367, 371. Furthermore, the severity and pervasiveness are to be looked at together so that "deficiencies in the strength of one factor may be made up by the strength in the other." Id. at 181. Contrary to Hale's assertion that she "needed only to perceive the environment to be abusive," the harassing conduct "must be severe or pervasive enough to create both an objectively hostile or abusive work environment-one that a reasonable person would find hostile or abusive-and a subjectively hostile work environment-one that the victim perceived to be hostile or abusive." Peterson v. Buckeye Steel Casings (1999), 133 Ohio App.3d 715, 723.
We have no difficulty in finding that Hale perceived the environment at work to be hostile and abusive. She was unable to continue her job with the fire department. For some time after the incident, she had difficulty performing daily tasks. She underwent counseling and was prescribed medication. Therefore, Hale presented sufficient facts to survive a motion for summary judgment on the subjective prong of the analysis.
However, Hale has failed to present sufficient facts to survive summary judgment on the objective prong of the analysis. In looking at when harassment becomes severe and pervasive enough to affect the terms and conditions of employment, courts have set a high bar. Courts have repeatedly held that isolated incidents, unless extremely serious, do not constitute a hostile work environment. See, e.g., Faragher v. City of Boca Raton (1998), 524 U.S. 775, 788, 118 S.Ct. 2275, 2283 (stating that "`simple teasing,' * * * offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the `terms and conditions of employment'"); Morris v. Oldham Cty. Fiscal Court (C.A.6, 2000), 201 F.3d 784, 790; Hafford v. Seidner (C.A.6, 1999), 183 F.3d 506, 514. Despite Hale's attempt to characterize Balazs' conduct as pervasive because he showed the picture to around fifteen firefighters, this really cannot be characterized as pervasive. The showing of the picture to firefighters occurred on only two days. Thus, at best, Balazs' actions were "isolated incidents" and as such would have to be extremely serious to be actionable under Chapter 4112. While we refuse to characterize Balazs' conduct as "casual joking" or "teasing" as the city does in its brief, we cannot find that it is extremely serious as required to create a hostile work environment actionable under Chapter 4112. Courts have generally only found isolated incidents to create a hostile work environment where they involve some form of sexual assault or touching. See, e.g., Morris, supra (holding that conduct was not severe or pervasive where co-worker told several dirty jokes in plaintiff's presence, made one verbal sexual advance related to plaintiff's evaluation, referred to plaintiff once as "Hot Lips," and made comments about plaintiff's dress); Brooks v. City of San Mateo (C.A.9, 2000), 229 F.3d 917, 924 (holding that a single incident of fondling was not severe and pervasive); Tatum v. Hyatt Corp. (D.D.C. 1994),918 F. Supp. 5, 7 (holding that conduct was not severe and pervasive where a co-worker wrapped his arms around the plaintiff, rubbed against her to simulate sex, commented on her looks, and put a piece of ice down her shirt). But, see, Little v. Windemere Relocation, Inc. (C.A.9, 2001), 265 F.3d 903, 911 (holding that an incident in which a co-worker raped plaintiff three times was severe); Guess v. Bethlehem Steel Corp. (C.A.7, 1990), 913 F.2d 463, 464 (holding that a single incident in which plaintiff's supervisor forced her face against his crotch was severe). Hale cites to no case law to support her assertion that these isolated incidents were "extremely serious." While Balazs' actions are certainly deplorable, they simply do not constitute sufficiently severe or pervasive harassment to be actionable under Chapter 4112. Therefore, Hale has failed to present sufficient evidence of severe and pervasive harassment to survive a motion for summary judgment.
Because we have held that Hale did not satisfy the third requirement in the prima facie hostile work environment case, the issue of whether she satisfied the fourth is moot. However, the trial court granted summary judgment in this case because it found that Hale had not established the fourth element. In doing so, it relied on its finding that:
 [T]he City of Dayton acted quickly and effectively after Ms. Hale brought to its attention the alleged conduct. Therefore, because Ms. Hale can not show that the City of Dayton failed to implement prompt and appropriate corrective action, it fails to satisfy all of the elements of employer liability as it pertains to hostile work environment sexual harassment.
While we may agree with the trial court that the city acted quickly once Hale brought the incident to the attention of her supervisor, we do not agree that Hale failed to present sufficient evidence regarding whether "the employer, through its agents or supervisory personnel, knew or should have known of the harassment and failed to take immediate and appropriate corrective action." Hampel, supra, at 177. We are particularly troubled by the evidence that at least three supervisors had some knowledge of Balazs' actions and failed to take any steps to report him or to stop his conduct. We would find that Hale had presented sufficient evidence on this element to survive summary judgment. However, because Hale failed to satisfy the third element, we find that the trial court did not err in granting summary judgment in favor of the City of Dayton on Hale's hostile work environment claim.
The first assignment of error is overruled.
 II. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY GRANTING THE DEFENDANT-APPELLEE JACK BALAZS' MOTION FOR SUMMARY JUDGMENT ON THE ISSUE OF INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.
Under this assignment of error, Hale argues that the trial court erred in granting summary judgment to Balazs on her claim of intentional infliction of emotional distress. Balazs argues, and the trial court held, that summary judgment was proper because he did not have the requisite intent to be liable for intentional infliction of emotional distress.
To establish a claim for intentional infliction of emotional distress, a plaintiff must show:
 (1) that the actor either intended to cause emotional distress or knew or should have known that actions taken would result in serious emotional distress to the plaintiff, (2) that the actor's conduct was so extreme and outrageous as to go "beyond all possible bounds of decency" and, was such that it can be considered as "utterly intolerable in a civilized community," * * * (3) that the actor's actions were the proximate cause of plaintiff's psychic injury, and (4) that mental anguish suffered by plaintiff is serious and of a nature that "no reasonable man could be expected to endure it."
Garrison v. Bobbitt (1999), 134 Ohio App.3d 373, 378-79. The supreme court has further described this tort:
 * * * It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"
 The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. The rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind. There is no occasion for the law to intervene in every case where someone's feelings are hurt. There must still be freedom to express an unflattering opinion, and some safety valve must be left through which irascible tempers may blow off relatively harmless steam.
Yeager v. Local Union 20 (1983), 6 Ohio St.3d 369, 374-75 (citations omitted).
Balazs argues that, under Yeager, Hale "must present evidence that Balazs acted with an intent to harm her. In addition, [Hale] must present evidence that Balazs' intent was more than tortious, more than criminal, more than malicious and even more aggravating than what would entitle a party to recover punitive damages." We can only characterize this as an utter misreading of Yeager. We do not read Yeager as requiring that a defendant have an intent level that is "more than tortious, more than criminal, more than malicious and even more aggravating than what would entitle a party to recover punitive damages." Rather, the quoted language from Yeager, as we interpret it, is merely illustrating the importance of the second element of the test-that the conduct be extreme and outrageous. Thus, we read Yeager to say that, if the conduct is not extreme and outrageous, no amount of intent will create a cause of action for intentional infliction of emotional distress. The intent requirement for this tort is much less than Balazs would have us impose. Hale need only show that Balazs "either intended to cause emotional distress or knew or should have known" that his actions would cause her emotional distress.
The trial court granted summary judgment in favor of Balazs because it found that Hale had not presented sufficient evidence to establish the intent requirement. The trial court focused on Hale's deposition statement that, to her knowledge, Balazs had "no intent to cause harm" to her and his statement that he did not intend to hurt or embarrass her. The trial court further found that there was "no evidence that Defendant Balazs knew or should have known that his actions would cause emotional distress to the Plaintiff." We disagree. Hale presented sufficient evidence on this issue to survive summary judgment. Balazs stated in his deposition that Hale "had been a friend of [his] for a long time," and he answered "Yes, I can" when asked, "Can you see how a situation like this would be embarrassing to a female?" Furthermore, he obviously realized that Hale was overweight given the picture he downloaded and could have inferred that she would be sensitive about that fact. It is also important to note that his actions took place in a male-dominated work environment and an environment where one's body is directly related to how well one can do his or her job. Finally, Balazs' actions were far from being an innocent jest. Balazs showed a naked picture of an obese woman to over a dozen of Hale's male coworkers and made statements that suggested that the woman looked like Hale. We believe that reasonable jurors could determine given these facts that Balazs should have known that his actions would cause Hale emotional distress.
However, Hale must still satisfy the second, third, and fourth elements of the prima facie case of intentional infliction of emotional distress. We have no difficulty in concluding that she has presented sufficient evidence on the third and fourth elements to survive summary judgment. She was unable to continue her job with the fire department. For some time after the incident, she had difficulty performing daily tasks. She underwent counseling and was prescribed medication. These facts are sufficient to present a jury question regarding whether she suffered serious emotional distress. Furthermore, she has also presented sufficient evidence that Balazs' conduct was the proximate cause of her emotional distress.
Therefore, we must address the second requirement-that Balazs' conduct was "so extreme and outrageous as to go beyond all possible bounds of decency and was such that it can be considered as utterly intolerable in a civilized community." It is here that the language from Yeager, quoted supra, is particularly helpful. We believe that the actions taken by Balazs in this case rise above the level of "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." Certainly, as compared to the facts of other cases in which courts have found summary judgment to be improper, the facts of this case present a jury question on the issue of whether the alleged conduct was extreme and outrageous. See, e.g., Yeager, supra (summary judgment was not proper where defendants threatened to injure the plaintiff and made menacing remarks about his family); Garrison, supra (summary judgment was not proper where defendants implied that plaintiff would physically harm others, arrested him for a violation that would humiliate him, and banned him from public property); Meyers v. Hot Bagels Factory, Inc. (1999),131 Ohio App.3d 82 (jury verdict in favor of plaintiff supported by sufficient evidence where owner of bagel store asked customer repeatedly if she was "a good fuck," told her she had a "nice firm ass," and told her a sexual anecdote). Here, Balazs showed a naked picture of an obese woman to over a dozen of Hale's male coworkers and made statements that suggested that the woman looked like Hale. He did so in a male-dominated body-conscious environment. He admitted that he understood that the situation would be embarrassing for a woman. Therefore, we find that Hale presented sufficient evidence on the second element.
Because Hale presented sufficient evidence to survive summary judgment on all the elements of an intentional infliction of emotional distress claim, the trial court erred in granting summary judgment in favor of Balazs on this claim.
The second assignment of error is sustained.
 III. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY GRANTING DEFENDANT-APPELLEE JACK BALAZS' MOTION FOR SUMMARY JUDGMENT ON THE ISSUE OF NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS.
Under this assignment of error, Hale argues that the trial court erred in finding that Ohio law does not allow a claim of negligent infliction of emotional distress where the plaintiff is not a bystander to an accident or in fear of physical harm to herself.
Ohio courts have long held that claims for negligent infliction of emotional distress will not lie where the plaintiff is not "a bystander to an accident" or "in fear of physical consequences to [her] own person." Gearing v. Nationwide Ins. Co. (1996), 76 Ohio St.3d 34, 40. See, also, Bunger v. Lawson Co. (1998), 82 Ohio St.3d 463, 466 (upholding an employee's claim for negligent infliction of emotional distress in a worker's compensation case, but stating that "[a] claim of negligent infliction of emotional distress is limited to instances `where the plaintiff has either witnessed or experienced a dangerous accident or appreciated the actual physical peril'").
To support her argument that Ohio law permits a claim for negligent infliction of emotional distress in sexual harassment cases, Hale cites to Crihfield v. Monsanto Co. (S.D.Ohio 1994), 844 F. Supp. 371. In that case, the Southern District of Ohio held that Ohio law allowed a cause of action for negligent infliction of emotional distress "in cases of on-the-job sexual harassment by a superior." Id. at 377. While we do not necessarily believe that this is a correct interpretation of Ohio law, we find Crihfield to be distinguishable from the case sub judice. Crihfield dealt with a quid pro quo sexual harassment case in which the plaintiff was subjected to indecent exposure and unwanted fondling by her supervisor with the prospect of job loss if she did not submit. See id. In this case, Hale alleges hostile work environment sexual harassment, and we have held that she did not make a prima facie case on that claim. Furthermore, the harassment Hale complains of was perpetrated by a co-worker, not a supervisor, and did not involve any sexual touching or exposure. Thus, we find that, even if Ohio were to adopt Crihfield's interpretation of Ohio law, the conduct Hale complains of would be insufficient to establish a claim for negligent infliction of emotional distress. Therefore, the trial court did not err in granting summary judgment to Balazs on this claim.
The third assignment of error is overruled.
 IV. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY GRANTING DEFENDANT-APPELLEE JACK BALAZS' MOTION FOR SUMMARY JUDGMENT ON THE ISSUE OF DEFAMATION OF CHARACTER.
Under this assignment of error, Hale argues that the trial court erred in granting summary judgment to Balazs on her claim of defamation. The trial court based its decision on the fact that there was no evidence that Balazs had ever stated that the woman in the picture was Hale.
In order to state a cause of action for defamation, Hale must establish: "(1) that a false statement of fact was made, (2) that the statement was defamatory, (3) that the statement was published, (4) that the plaintiff suffered injury as a proximate result of the publication, and (5) that the defendant acted with the required degree of fault in publishing the statement." Stanley v. City of Miamisburg (Jan. 28, 2000), Montgomery App. No. 17912, unreported, at *6, quoting Pollock v. Rashid (1996), 117 Ohio App.3d 361, 368. The trial court focused on the first requirement in its decision granting summary judgment to Balazs. It specifically found that Balazs' showing of the picture on the computer and his accompanying queries regarding who it resembled could constitute a statement. Furthermore, the trial court found that the statement tended "to cause injury to the Plaintiff's reputation or expose her to public hatred, contempt, ridicule, shame or disgrace or affect her adversely in her profession." However, the trial court found that the statement was not false. We believe that a more appropriate characterization is that the statement was not a false statement of fact.
There is no evidence that Balazs told anyone that the woman in the picture was Hale. At best, he asked, "Doesn't this look like Bonnie?" This is a question, not a statement of fact. Furthermore, we find no evidence that Balazs intended to mislead people into believing that the picture was of Hale or that anyone was in fact misled. None of the statements by the firefighters viewing the picture indicate that they believed it to be Hale. Some of them agree that it looked like her, but Hale herself stated that the picture resembled her. Therefore, Hale did not present sufficient evidence to establish a claim of defamation, and the trial court did not err in granting summary judgment to Balazs on that claim.
The fourth assignment of error is overruled.
The judgment of the trial court will be affirmed in part and reversed in part. We will reverse and remand for a jury trial on the intentional infliction of emotional distress claim. We will affirm the trial court's decision on the remaining claims.
BROGAN, J. and FAIN, J., concur.
[1] Hale asserts that four lieutenants viewed the picture. However, the statement of one indicates that he told Balazs that he did not have time to view the laptop and that he did not see the picture.
[2] Hale listed twelve defendants in her amended complaint, including three John Does, the City Manager, four City Commissioners, and the Mayor. Summary judgment was granted in favor of all defendants. In her brief, Hale only discusses the granting of summary judgment to the city, Balazs, and Collins. Therefore, we have limited our discussion to those defendants. However, our decision with regard to the city would apply as well to the city officials listed in the complaint.
[3] We note that Hale does not even attempt to argue that Balazs was a supervisor or manager, but rather she describes him in her brief as "merely a co-employee."
[4] Hale's inclusion of Collins as a defendant in this action seems to stem mostly from her anger that he was not more empathetic and helpful to her during the investigation of Balazs. Even if we were to agree with Hale that Collins should have been more sympathetic to her situation, Chapter 4112 does not provide a cause of action against supervisors who are, at worst, rude and unsympathetic to employees while investigating their sexual harassment claims.